# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| CARLOS JOEL CASTRO-ARTEAGA | ) | Case No. 4:25-mj-70846-MAG |
| | ) | |
| *Defendant(s)* | ) | |

FILED

Jul 08 2025

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of May 15, 2025 in the county of Alameda in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| - 21 U.S.C. §§ 841(a)(1)<br>- 21 U.S.C. §§ 841(b)(1)(B)(vi) | Possession of Controlled Substance with Intent to Distribute; Possession with Intent to Distribute 40 Grams or More of a Mixture and Substance Containing Fentanyl |

This criminal complaint is based on these facts:

Please see attached affidavit of DEA Task Force Officer Anthony Scafani.

☑ Continued on the attached sheet.

/s/
*Complainant's signature*

Anthony Scafani, Task Force Officer, DEA
*Printed name and title*

Approved as to form   /s/
  AUSA EMILY R. DAHLKE

Sworn to before me by telephone.

Date: 07/07/2025

/s/ Kandis Westmore
*Judge's signature*

City and state: Oakland, CA

Hon. Kandis A. Westmore, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Anthony Scafani, a Task Force Officer with the Drug Enforcement Administration (DEA), having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Carlos Joel CASTRO-ARTEAGA (hereinafter referred to as "CASTRO-ARTEAGA") with possession with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi), occurring on or about May 15, 2025, in Oakland, California, in the Northern District of California.

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Task Force Officers, Special Agents, and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have worked as a sworn officer for the SFPD for approximately 15 years. I have been assigned as a Sergeant at the SFPD Narcotics Unit since June 2024, and prior to that I was a Sergeant at the Tenderloin Police Station for approximately two years. As an Officer prior to being promoted, I was assigned to the SFPD Narcotics Division for approximately five years.

5. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

6. In the police academy, then during the SFPD Detective School and The Bureau of Alcohol, Tobacco Firearms and Explosives' Undercover Operative Training Class, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically; fentanyl, cocaine base and methamphetamine investigations.

7. During my employment at SFPD, I have participated in over one thousand controlled substance investigations and arrests. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations where I was the "buyer", "close cover" and part of the acting arrest team, records research, physical surveillance, Title III telephonic and social media interceptions and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I

have reviewed hundreds of reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to narcotics trafficking.

8. Based on my training and experience, as well as conversations I have had with drug dealers and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

9. I have also had discussions with other law enforcement officers and training in the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl, cocaine base, methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

10. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part.

## APPLICABLE STATUTE

11. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21 U.S.C. §§ 841(a)(1) it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, (fentanyl) is a Schedule II controlled substance.

12. **Possession with Intent to Distribute 40 Grams or More of a Mixture and Substance Containing Fentanyl**. Under Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi) it is unlawful for any person to knowingly or intentionally possess with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl.

**STATEMENT OF PROBABLE CAUSE**

13. Between February 6, 2025, and May 15, 2025, CASTRO-ARTEAGA sold an undercover law enforcement officer (UC) fentanyl on three different occasions in Oakland, California.

14. On February 6, 2025, CASTRO-ARTEAGA sold the UC approximately one ounce of suspected fentanyl for $600.00. The suspected fentanyl tested presumptive positive for the presence of fentanyl using a TruNarc Analyzer. During this incident, CASTRO-ARTEAGA directed the UC to meet him at the intersection of Jayne Avenue and Perkins Street in Oakland, California. Surveillance was conducted and agents/officers observed CASTRO-ARTEAGA arrive at the UC's vehicle in a bronze colored Nissan Altima with California license plate number 9BNZ021, (the "Target Vehicle"). At the conclusion of the deal, CASTRO-ARTEAGA was observed driving the Target Vehicle back to the intersection of Warwick Avenue and Euclid Avenue where it was left parked and unattended. The suspected fentanyl was packaged and sent to DEA's Western Laboratory for analysis. I received a copy of the chemical analysis report. The suspected fentanyl tested confirmatory positive for the presence of fentanyl with a net weight of approximately 28.3 grams.

15. On March 18, 2025, CASTRO-ARTEAGA sold the UC approximately two ounces of suspected fentanyl for $1200.00. The suspected fentanyl purchased tested presumptive inconclusive using a TruNarc Analyzer. During this incident, law enforcement watched CASTRO-ARTEAGA exit the security gate of 325 Euclid Avenue (Oakland, CA) and walk to the Target Vehicle which was parked across the street from 325 Euclid Avenue. CASTRO-ARTEAGA entered the driver's seat of the Target Vehicle and drove to the intersection of Jayne Avenue and Perkins Street (Oakland, CA) and conducted the deal with the UC. CASTRO-ARTEAGA drove the Target Vehicle straight back to the immediate area of 325 Euclid Avenue and parked. CASTRO-ARTEAGA was seen entering the security gate to 325 Euclid Avenue, ascend the exterior staircase to the 2nd story where he entered the common door and out of law enforcements view. The suspected fentanyl was packaged and sent to DEA's Western Laboratory

for chemical analysis. I received a copy of the chemical analysis report. The suspected fentanyl tested confirmatory positive for the presence of fentanyl with a net weight of approximately 55.9 grams.

16. During the course of the investigation, Customs and Border Protection ("CBP") Task Force Officer Hector Vallejo learned that CASTRO-ARTEAGA was encountered by the Department of Homeland Security ("DHS") on May 2, 2022 in Eagle Pass, Texas. As part of that encounter, DHS took a photograph of CASTRO-ARTEAGA. I compared the surveillance video taken during the March 18, 2025, UC buy to the photograph taken of CASTRO-ARTEAGA by the DHS on May 2, 2022, and confirmed they were the same person.

17. On May 15, 2025, CASTRO-ARTEAGA sold the UC approximately three ounces of suspected fentanyl for $1500.00. The suspected fentanyl purchased tested presumptive inconclusive using a TruNarc Analyzer. During this incident, law enforcement watched CASTRO-ARTEAGA exit the security gate of 325 Euclid Avenue (Oakland, CA) and walk to the Target Vehicle. Law enforcement surveilled CASTRO-ARTEAGA as he drove to the pre-determined deal location (West Oakland BART). CASTRO-ARTEAGA conducted the hand-to-hand deal with the UC and ultimately drove the Target Vehicle back to his place of residence and entered 325 Euclid Avenue (Oakland, CA). The suspected fentanyl was packaged and sent to DEA's Western Laboratory for chemical analysis. I received a copy of the chemical analysis report which confirmed the suspected fentanyl tested positive for the presence of fentanyl with a net weight of approximately 84.2 grams.

//
//
//
//
//
//

**CONCLUSION**

18.     Based on the facts and circumstances set forth above, I believe probable cause exists to believe that on May 15, 2025, Carlos Joel CASTRO-ARTEAGA knowingly and intentionally distributed a substance containing 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, within the Northern District of California, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi). Accordingly, I respectfully request that the Court issue a criminal complaint and warrant for his arrest.

/s/
Anthony Scafani
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 7th day of July 2025.

*Kandis Westmore*

HONORABLE KANDIS A. WESTMORE
United States Magistrate Judge